## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

### CASE NO.: 8:21-cv-372-CEH-TGW

FLORENCIO MARTINEZ RUBIO,

       *Plaintiff,*

v.

FEDCA SCRAP RECYCLING CORP, and
ELBER A. BARON, Individually,

       *Defendant.*

_____/

### DEFENDANTS' MOTION TO APPROVE AND
### ENFORCE SETTLEMENT AND TO DISMISS ACTION

      Defendants, Fedca Scrap Recycling Corp. and Elber Baron, Individually, by and through the undersigned counsel, hereby file this Motion to Approve and Enforce Settlement Agreement and to Dismiss with Prejudice, and state the following in support thereof:

### FACTS

      On May 21, 2021, Plaintiff filed the instant action alleging unpaid overtime and minimum wage compensation in violation of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and the Florida Minimum Wage Act under Article X, §24 of the Florida Constitution (Doc. 1). The Plaintiff in this matter was a long-time employee of Fedca Scrap Recycling Corp. It was the

position of the Plaintiff that he was not paid either the Federal or Florida State minimum wage, and was not paid at the overtime rate for the hours he worked in excess of 40 per week.

It was the position of the Defendants that Plaintiff was exempt from both minimum wage and overtime pay pursuant to Section 13(a)(1) of the FLSA as he was employed as bona fide executive and/or administrative employee. It was also the Defendant's position that, even if not an exempt employee, the Plaintiff was paid at least minimum and never worked more than 40 hours per week. Finally, the Defendants filed a Motion to Dismiss the Complaint as the Plaintiff Failed to State a Claim upon which Relief could be granted on all three (3) counts in the Complaint (Doc. 15). Said motion remains pending before this Court.

There has been significant litigation in this case regarding whether the Plaintiff was exempt pursuant to Section 13(a)(1) of the FLSA, was paid below the minimum wage and whether he worked in excess of 40 hours per week. On October 1, 2021, the parties attended a private mediation conference but, as indicated in the Mediation Report, the parties reached an impasse (Doc 22). Following the impasse at mediation, the parties continued to negotiate. In an October 12, 2021 email exchange, the parties finally resolved their differences, compromised their respective positions and reached an agreement to settle these matters for a total of $50,000.00.

Upon further negotiation, the parties memorialized the agreement to be broken down as follows:

1.    $26,184.45 was to be paid to the Plaintiff; and

2.     $23,815.55 was for attorney's fees and costs.

As stated, *supra*, the Defendants hotly contested the Plaintiff claims. However, recognizing the uncertainties of trial, the Plaintiff agreed to compromise at and accept the aforesaid amounts.  Finally, the Defendants have agreed to pay the Plaintiff's attorneys' fees and costs in the amount of $23,815.55.  The fees and costs were negotiated separately from the amounts paid to Plaintiff and represent a discount off the actual fees claimed by Plaintiff's counsel to have been incurred.

The Parties negotiated further on the specific terms of the agreement as well. On December 10, 2021, the Plaintiff's counsel emailed the final version of the settlement agreement containing all the demands of the Plaintiff.  On December 17, 2021, the Defendants agreed to all the language in the settlement release demanded by Plaintiff and a final agreement was reached on all terms.  The email exchange memorizing the final agreement on all terms in attached hereto as **Exhibit A** and the final version of the FLSA settlement agreement containing all terms to which the parties agreed is attached hereto as **Exhibit B**.  As evidenced in the final terms to which the parties agreed, it was important for both the Plaintiff and the Defendants to maintain their reputations and put the matter behind them, hence the confidentiality and non-disparagement clauses.

Based on these discussions, analysis, and exchange of information, the Defendants represent that there was a *bona fide* factual dispute between the Parties regarding the case and the damages and relief claimed therein.   Based on the facts and arguments discussed and presented between the Parties, Plaintiff and Defendants

had agreed to resolve this case in its entirety on terms to which they mutually stipulated and agreed were fair, reasonable and adequate. The FLSA Settlement Agreement was to result in Plaintiff receiving a payment immediately, instead of waiting for a possible payment at an unknown future date. The FLSA Settlement Agreement further allows the Parties to put this case and all issues related to Plaintiff's alleged employment behind them so that they can eliminate the distractions of litigation and focus on other matters.

The final Stipulated Settlement Agreement reached by the parties was emailed to counsel for Plaintiff on December 17, 2021. On December 30, 2021, counsel for Plaintiff contacted the undersigned by telephone and reported that the Plaintiff was having second thoughts about signing the memorialization of the stipulated settlement agreement that had already been approved by Plaintiff. Counsel for Plaintiff did not provide any details concerning the basis for the Plaintiff's reluctance to sign the stipulated settlement agreement to which the parties had already agreed to every word contained in the release.

## MEMORANDUM OF LAW

A compromised settlement under the FLSA is one in which the parties stipulate and agree that the terms are both fair and reasonable. *See Nall v. Mal-Motels, Inc.*, 723 F.3d 1304, 1308 (11th Cir. 2013); see also *Gaughan v. Rubenstein*, 261 F. Supp. 3d 390, 403 (S.D.N.Y. 2017) (finding a stipulated settlement agreement for which plaintiff refused to sign was not obtained through duress as plaintiff acting

through counsel, reached a compromised agreement "after a long negotiation period"). In the case at bar, the terms of the agreement were not only negotiated by the parties to confirm that they were fair and reasonable but the final version of the terms of the stipulated agreement were proposed by Plaintiff and fully adopted by Defendants.

Moreover, a compromised FLSA settlement becomes final and enforceable if it is supervised by either the Department of Labor or a court. *See Lynn's Food Stores, Inc. v. United States Department of Labor*, 679 F.2d 1350, 1353-54 (11th Cir. 1982) (noting that "[s]ettlements may be permissible in the context of a suit brought by employees under the FLSA" because the employees are "likely to be represented by an attorney who can protect their rights under the statute" when the settlement is reached within the "adversarial context" of a lawsuit). Before approving an FLSA settlement, a court must scrutinize it to determine if it constitutes a fair and reasonable resolution of a *bona fide* dispute. *Id*. at 1354-55. If the settlement reflects a reasonable compromise over issues that are actually in dispute, the Court may approve the settlement. *Id*.

Where such a stipulation is made, and the settlement is otherwise reasonable on its face, there is no reason to conclude that the Plaintiff's recovery "was adversely affected by the amount of fees paid to his attorney." *Id*. In *Silva v. Miller*, 307 F. App'x 349 (11th Cir. 2009), the Eleventh Circuit observed that the FLSA "contemplates that 'the wronged employee should receive his full wages plus the penalty without incurring any expense for legal fees or costs.'" *Id*. at 351 (quoting

*Maddrix v. Dize*, 153 F.2d 274, 275-76 (4th Cir. 1946)). Therefore, in any case where a plaintiff agrees to accept less than his full FLSA wages and liquidated damages, he has compromised his claim within the meaning of Lynn's Food Stores.

With respect to attorney's fees and costs, scrutiny is not required where the Parties stipulate that the sum to be paid "was agreed upon separately and without regard to the amount paid to the plaintiff." *Bonetti v. Embarq Management Co.*, 715 F.Supp.2d 1222, 1228 (M.D. Fla. 2009). When a settlement agreement includes an amount to be used to pay attorney's fees and costs, the "FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Silva*, 307 F. App'x at 351. If the Court finds the payment to the attorney is not reasonable, the Court must consider whether a plaintiff's recovery might have been greater if the parties had reduced the attorney's fee to a reasonable amount.

Finally, it is not necessary that a motion to enforce a settlement be filed jointly by both parties to the action. Rather, any party may file a motion to approve an FLSA settlement agreement instead of a joint motion. *Garcon v. T.W. Food Distributors, Inc.*, No. 9:16-cv-81635 (S.D. Fla. March 28, 2017); *see also Munoz v. Russo Battista, P.L. et al.*, No. 14-cv-60613 [D.E. 26] (S.D. Fla. May 5, 2014) (Holding that any party may move for approval of a settlement agreement and the "Court will then determine whether the settlement is fair and reasonable and will hold a hearing on that issue if necessary."). Because a party refuses to participate in a joint motion

for approval, it is not the same as opposing approval of the settlement. *Bermudez v. AFR Env't Corp.*, No. 16-61363-CIV, 2017 WL 11220350, at *3 (S.D. Fla. Apr. 13, 2017) (explaining that it is unnecessary for both parties to "partake in a joint motion for approval" because it is the responsibility of the Court "which must decide whether to approve of the fairness of the settlement and the allocation of the settlement funds").

Most importantly, this Court has the authority to enforce a settlement agreement "in the event that one party refuses to abide by the agreement prior to the dismissal of the action." *Kent v. Baker*, 815 F.2d 1395, 1399-1400 (11th Cir. 1987). A hearing is required on a motion to enforce a settlement agreement, but only where material facts concerning the existence of an agreement are in dispute. *Massachusetts Casualty Insurance Company v. Forman*, 469 F.2d 259, 260 (5th Cir. 1972). In a similar matter of *Lytle v. King's Construction Company*, No. 1:14-CV-288-GGB, 2015 WL 12856450, at *1 (N.D. Ga. July 30, 2015), the Court outlined the procedural posture as follows:

> On January 31, 2014, Jason Lytle filed a complaint against Defendants alleging violations of the Fair Labor Standards Act ("FLSA"). (Doc. 1). In November 2014, the parties consented to jurisdiction before a magistrate judge and the case was reassigned to the undersigned. (Doc. 35). Shortly thereafter, I referred the case for mediation before a different magistrate judge. (Docs. 37, 40). The parties were unable to reach a settlement during that mediation. (Doc. 44).
>
> On February 11, 2015, Defendants filed a notice of settlement with the Court. (Doc. 46). In it, they notified the Court of a tentative settlement, pending the parties finalizing the terms of the settlement. (Id.). On April 10, 2015, Lytle filed a "Notice of an impasse of settlement negotiation and placement of this matter back on the Court's active docket." (Doc.

> 49). On May 29, Lytle filed a notice of settlement and a motion to enforce the settlement agreement, which is the subject of the instant order. (Doc. 52).

*Id.*

Furthermore, in the *Lytle* matter, plaintiff filed a Motion to Enforce Settlement following the negotiations as outlined below:

> In the motion, Lytle argues that, in February 2015, the parties had agreed to the monetary amount and installment payments of a settlement, but still needed to finalize other terms. (Doc. 52 at 1). He asserts that, in the course of negotiating, he sent a March 21 e-mail to defense counsel including terms of settlement to which he would agree. (Id. at 1). He argues that Defense counsel sent changes back to him but did not seek to change the default provision as contained in the March 21 revision. (Id. at 1-2). Lytle then asserts that the "final revised version of the agreement submitted on March 12, 2015" contained a default penalty provision. (Id.). On March 31, Lytle asserts, he agreed to Defendants' terms of settlement in an e-mail. (Id.). Soon thereafter, he says, Defendants accepted the terms as well. Later that evening, however, Defendants objected to the penalty clause of the default provision. (Id. at 2-3). Lytle then told Defendants he would not agree with any change to that provision. (Id. at 3).

*Id.*

The *Lytle* Court pointed out that "construction and enforcement of a settlement agreement is governed by state law applicable to contracts in general." Id. at *3 (quoting *Hayes v. National Service Industry*, 196 F.3d 1252, 1254 (11th Cir. 1999)). In Florida, to compel enforcement of a settlement agreement, "its terms must be sufficiently specific and mutually agreed upon as to every essential element; uncertainty as to nonessential terms or small items will not preclude the enforcement of a settlement agreement." *Spiegel v. H. Allen Holmes, Inc.*, 834 So. 2d 295 (Fla. 4th DCA 2002).

Florida contract law is clear that "that the acceptance of an offer that results in an enforceable agreement must be (1) absolute and unconditional; (2) identical with the terms of the offer; and (3) in the mode, at the place, and within the time expressly or impliedly stated within the offer." *Trout v. Apicella*, 78 So.3d 681, 684 (Fla. 5th DCA 2012); *see also Hanson v. Maxfield*, 23 So.3d 736, 739 (Fla. 1st DCA 2009) ("An acceptance of a settlement offer will be effective to create a binding settlement only if it is absolute, unconditional, and identical with the terms of the offer."); *Sorocka v. Severe*, 858 So.2d 388, 389 (Fla. 3d DCA 2003) ("An acceptance is effective to create a contract only if it is absolute and unconditional, and identical with the terms of the offer."). Thus, if an acceptance is the "mirror image" of the offer in all material respects, it is treated as an enforceable agreement under the law of contracts in Florida. *Pena v. Fox*, 198 So.3d 61, 63 (Fla. 2d DCA 2015); *see also Padron v. Plantada*, 632 So.2d 113 (Fla. 3d DCA 1994).

In the case at bar, the Defendants assert that the issue of Plaintiff's recovery was negotiated independently and resolved to the Plaintiff's satisfaction. The amount of Plaintiff's recovery represented a compromise based upon a *bona fide* dispute as to the disputed issues of fact. The parties negotiated following the mediation conference both by telephone conferences and by email exchanges. A final agreement was reached between the parties on December 17, 2021. Specifically, the Plaintiff proposed a written agreement and Defendants accepted every detailed term proposed by Plaintiff which was reduced to a clean version of the

agreement.  Consequently, the agreement contains all the necessary elements of an enforceable contract.

Finally, the Defendants are entitled to attorney's fees and costs for bringing this motion.  The stipulation specifically provided that "[e]ach party shall bear their own attorney's fees and court costs in this matter, excepting therefrom such attorney's fees and court costs incurred in the enforcement of the Agreement." As the defendant was forced to file a motion to compel and participate in an evidentiary hearing to enforce the settlement agreement, it is entitled to attorney's fees.  *Spiegel v. H. Allen Holmes, Inc.*, 834 So. 2d 295, 298 (Fla. 4th DCA 2002).  Here, it was agreed upon by the parties in Paragraph 11, Breach of Agreement, that:

> In the event it is necessary for any Party to retain the services of an attorney or to initiate legal proceedings to enforce the terms of this Agreement, the prevailing party or parties shall be entitled to recover from the non-prevailing party or parties. All costs of such enforcement, including reasonable attorney's fees, and including trial and appellate proceedings.

Consequently, pursuant to the terms as set forth in Paragraph 11 of the final agreement that was proposed by the Plaintiff and accepted by the Defendant in full, both attorney's fees and costs are recoverable by Defendant from Plaintiff for bringing this motion as the prevailing party.

**WHEREFORE**, the Defendants respectfully request that this Court enter a Judgement finding that an enforceable settlement agreement was reached, that the settlement agreement is a fair resolution of a bona fide dispute under the FLSA, that the underlying action is dismissed with prejudice and the Defendants are to be

awarded attorney's fees, costs and such other relief as this Court may deem appropriate.

Respectfully submitted,
January 19, 2022 by

/s/Ben H. Cristal
Ben H. Cristal, Esq.
Florida Bar No.:  84761
CRISTAL LAW GROUP
P.O. Box 16680
Clearwater, FL  33766
Telephone: (813) 258-8500
Facsimile: (813) 258-8501
mail@cristallawgroup.com
Attorney for Defendants

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of this document was served via electronic mail to Miguel Bouzas, Esq., Florin, Gray, Bouzas & Owens, LLC, at miguel@fgbolaw.com and debbie@fgbolaw.com on this 19th day of January 2022.

/s/Ben H. Cristal
Ben H. Cristal, Esq.
Certifying attorney

Exhibit A

| | |
|---|---|
| **From:** | Amanda Whiteside |
| **To:** | "Miguel Bouzas" |
| **Cc:** | Ben Cristal |
| **Subject:** | RE: Martinez Rubio, Florencio v. Fedca Scrap Recycling Corp and Elber Baron |
| **Date:** | Friday, December 17, 2021 2:36:16 PM |
| **Attachments:** | SETTLEMENT AGREEMENT AND RELEASE.pdf |

Good afternoon,

Please see attached.

Thank you,
Amanda

Amanda B. Whiteside
CRISTAL LAW GROUP
**Attorneys and Counselors-At-Law**
**P.O. Box 16680**
**Clearwater, FL 33766**
**813-258-8500**
www.CristalLawGroup.com
AWhiteside@CristalLawGroup.com
*Protecting Florida's Employers*

---

**From:** Ben Cristal <bcristal@cristallawgroup.com>
**Sent:** Friday, December 17, 2021 12:52 PM
**To:** 'Miguel Bouzas' <MBouzas@fgbolaw.com>
**Cc:** Amanda Whiteside <awhiteside@cristallawgroup.com>
**Subject:** FW: Martinez Rubio, Florencio v. Fedca Scrap Recycling Corp and Elber Baron

Miguel,

My client agreed to changes.  Amanda will make the changes and email you the final version for signature.

Ben H. Cristal
CRISTAL LAW GROUP
**Attorneys and Counselors-At-Law**
**P.O. Box 16680**
**Clearwater, FL 33766**
**813-258-8500**
www.CristalLawGroup.com

BCristal@CristalLawGroup.com
*Protecting Florida's Employers*

---

**From:** Miguel Bouzas <MBouzas@fgbolaw.com>
**Sent:** Friday, December 10, 2021 1:58 PM
**To:** Ben Cristal <bcristal@cristallawgroup.com>
**Cc:** Debbie De la Rosa <DDelaRosa@fgbolaw.com>; Amanda Whiteside <awhiteside@cristallawgroup.com>
**Subject:** RE: Martinez Rubio, Florencio v. Fedca Scrap Recycling Corp and Elber Baron

Ben – Attached are the revisions which Martinez will agree to.  I am as frustrated as you that this is not done yet, but let's get it over the finish line.  Please advise so I can get this signed.

Thank you,
Miguel

---

**From:** Ben Cristal <bcristal@cristallawgroup.com>
**Sent:** Monday, December 6, 2021 10:54 AM
**To:** Miguel Bouzas <MBouzas@fgbolaw.com>
**Cc:** Debbie De la Rosa <DDelaRosa@fgbolaw.com>; Amanda Whiteside <awhiteside@cristallawgroup.com>
**Subject:** RE: Martinez Rubio, Florencio v. Fedca Scrap Recycling Corp and Elber Baron

Congratulations!

Ben H. Cristal
Cristal Law Group
**Attorneys and Counselors-At-Law**
**P.O. Box 16680**
**Clearwater, FL 33766**
**813-258-8500**
www.CristalLawGroup.com
BCristal@CristalLawGroup.com
*Protecting Florida's Employers*

---

**From:** Miguel Bouzas <MBouzas@fgbolaw.com>
**Sent:** Monday, December 6, 2021 10:40 AM
**To:** Ben Cristal <bcristal@cristallawgroup.com>
**Cc:** Debbie De la Rosa <DDelaRosa@fgbolaw.com>; Amanda Whiteside <awhiteside@cristallawgroup.com>
**Subject:** RE: Martinez Rubio, Florencio v. Fedca Scrap Recycling Corp and Elber Baron

Ben – I apologize for delay – I've been out of office for a bit since my son was born. He also has some changes I have not incorporated yet.  I have a few depos tomorrow need to prepare for so I think I can turn it around on Wednesday.
Thanks,
Miguel

**From:** Ben Cristal <bcristal@cristallawgroup.com>
**Sent:** Tuesday, November 30, 2021 12:00 PM
**To:** Miguel Bouzas <MBouzas@fgbolaw.com>
**Cc:** Debbie De la Rosa <DDelaRosa@fgbolaw.com>; Amanda Whiteside <awhiteside@cristallawgroup.com>
**Subject:** FW: Martinez Rubio, Florencio v. Fedca Scrap Recycling Corp and Elber Baron

Miguel,

Its been almost 3 weeks since we sent you the revised settlement agreement.  Please get me an update on getting it signed and returned.

Thanks.

Ben H. Cristal
CRISTAL LAW GROUP
**Attorneys and Counselors-At-Law**
**P.O. Box 16680**
**Clearwater, FL 33766**
**813-258-8500**
www.CristalLawGroup.com
BCristal@CristalLawGroup.com
*Protecting Florida's Employers*

**From:** Ben Cristal
**Sent:** Wednesday, November 10, 2021 5:25 PM
**To:** 'Miguel Bouzas' <MBouzas@fgbolaw.com>
**Cc:** Amanda Whiteside <awhiteside@cristallawgroup.com>
**Subject:** Martinez Rubio, Florencio v. Fedca Scrap Recycling Corp and Elber Baron

Miguel,

Revised agreement attached.



Ben H. Cristal, Esq.
Attorney-at-Law
P.O. Box 16680
Clearwater, FL 33766
813-258-8500
BCristal@CristalLawGroup.com

CONFIDENTIAL: This electronic message contains information from Cristal Law Group that is confidential and protected by the attorney-client privilege. This information is intended to be for the use of the individual or entity named above. If you are not the intended recipient, please delete this message without reading it or the attachment and notice BCristal@CristalLawGroup.com of this inadvertent misdelivery. If you did not expect this communication from Ben H. Cristal, please be aware that the disclosure, copying, distribution or use of the contents of his message is prohibited. Thank you.

Exhibit B

## <u>MUTUAL GENERAL RELEASE AGREEMENT</u><br><u>AND COVENANT NOT TO SUE</u>

THIS MUTUAL GENERAL RELEASE AGREEMENT AND COVENANT NOT TO SUE ("AGREEMENT") is made and entered into by and between FLORENCIO MARTINEZ RUBIO ("PLAINTIFF") on the one hand and Fedca Scrap Recycling Corp., FEDCA SCRAP METALS INC. and ELBER BARON ("DEFENDANTS," RELEASEES" or the "COMPANY") on the other hand.

### DEFINITIONS

<u>RELEASEES</u> - Persons or entities being released from liability or other burden to include, but not limited to, Fedca Scrap Recycling Corp., Fedca Scrap Metals Inc., Elber Baron, their owners, officers, directors, subsidiaries, parent companies, predecessors, successors and assigns of each of the foregoing; affiliates and related companies, agents, servants, employees, attorneys, adjusters, supervisors and managers without limitation.

<u>RELEASE</u> - To discharge a claim or lawsuit, whether claimed, known or unknown. This relinquishes another party, in this case the Releasees, from a current obligation or future obligation resulting from a claim or lawsuit.

<u>COMPANY</u> - Fedca Scrap Recycling Corp., Fedca Scrap Metals Inc., their owners, officers, Board of Directors and employees.

### WITNESSETH

WHEREAS FLORENCIO MARTINEZ RUBIO asserted various claims and charges against the COMPANY and ELBER BARON in a Federal lawsuit filed in the United States District Court, Middle District of Florida, Tampa Division, under Case No. 8:21-CV-372-CEH-TGW (THE "Federal Lawsuit");

WHEREAS the COMPANY and ELBER BARON asserted various claims and charges against FLORENCIO MARTINEZ RUBIO as well as other defendants in a Florida State lawsuit filed in the 13th Judicial Circuit of the State of Florida, County of Hillsborough, under Case No. 21-CA-000365 ("the State Lawsuit");

WHEREAS the parties desire to settle fully and finally settle their differences with each other which settlement constitutes the good faith settlement of those claims;

NOW, THEREFORE, in consideration of these premises and mutual promises, covenants and agreements stated herein, and other good and valuable consideration, FLORENCIO MARTINEZ RUBIO and the COMPANY hereby agree as follows:

1.      **VALUABLE CONSIDERATION:**

     a.      The COMPANY will pay FLORENCIO MARTINEZ RUBIO, within FORTY-FIVE (45) days after his execution and return of this agreement to Ben H. Cristal, counsel for the COMPANY, the amount of **FIFTY-THOUSAND DOLLARS ($50,000.00)**, United States Currency.  FLORENCIO MARTINEZ RUBIO agrees to indemnify and hold the RELEASEES harmless for any and all subsequent imposition of taxes, penalties and interest by the IRS to the COMPANY resulting from his failure to pay any tax obligation owed by him.

The total amount of the settlement proceeds is being allocated as follows:

     i.      A check in the amount of **$26,184.45** made payable to **FLORENCIO MARTINEZ RUBIO**, representing all damages claimed.  No deductions shall be made from this check and a Form 1099 shall be issued; and

     ii.      A check in the amount of **$23,815.55** made payable to "**Florin, Gray, Bouzas & Owens, LLC**", Counsel for the plaintiff, for attorneys' fees and costs.

     b.      FLORENCIO MARTINEZ RUBIO agrees that the receipt and sufficiency of said amount is hereby acknowledged, due for himself, his heirs, agents, representatives, successors and assigns, hereby forever release, discharge, and surrender any and all claims, whether asserted or not asserted, known or unknown, against the RELEASES.

     i.      FLORENCIO MARTINEZ RUBIO agrees that no payments are due and owing to him by the Released Parties as a result of his employment with the COMPANY.
     ii      FLORENCIO MARTINEZ RUBIO agrees that this is a disputed claim and represents that he has been paid in full for all hours worked while employed with the COMPANY, including any overtime hours worked while in any non-exempt job position.

     c.      By entering into this Agreement, no Party admits any liability, fault or wrongdoing.

2.      **COMPLETE RELEASE:**

     a.      FLORENCIO MARTINEZ RUBIO hereby declares and represents that he is over the age of eighteen (18) and that he is legally competent to execute this GENERAL RELEASE AGREEMENT AND COVENANT NOT TO SUE knowingly and voluntarily.  FLORENCIO MARTINEZ RUBIO further declares and represents that he has never been declared incompetent by any court, government agency or any similar body authorized to make such declaration. FLORENCIO MARTINEZ RUBIO acknowledges that no promise or inducement not herein expressed has been made, that he is not relying upon any statement or representation made by RELEASEES or any agent, physician, doctor, lawyer or other person representing the RELEASEES or any one of the RELEASEES, concerning the nature, extent or duration of the injuries, losses or damages here involved or the legal liability therefor or concerning any other

thing or matter; that the payment of the above mentioned sum is in compromise settlement and full satisfaction of all the above and below mentioned actions, claims and demands whatsoever.

      b.     This MUTUAL GENERAL RELEASE AGREEMENT AND COVENANT NOT TO SUE shall apply only to actions, claims, or demands that arose, or could arise, from the facts giving rise to the claim being settled hereby. This SETTLEMENT AGREEMENT AND RELEASE does not apply to any actions, claims, or demands that may arise from any facts which have not yet occurred.

      c.     Within seven days of receipt of the Settlement Proceeds, FLORENCIO MARTINEZ RUBIO will dismiss any and all claims against the RELEASEES, with prejudice, to include, but not limited to, the Federal Lawsuit filed against the COMPANY and ELBER BARON in the United States District Court, Middle District of Florida, Tampa Division, under Case No. 8:21-CV-372-CEH-TGW. Additionally, upon filing the motion to dismiss the Federal Lawsuit with prejudice, but in no event later than five days after doing so, the COMPANY and ELBER BARON will dismiss, with prejudice, FLORENCIO MARTINEZ RUBIO as a defendant from the lawsuit filed in the 13th Judicial Circuit of the State of Florida, County of Hillsborough, under Case No. 21-CA-000365. Additionally, upon FLORENCIO MARTINEZ RUBIO returning an executed copy of this Agreement to counsel for COMPANY, the COMPANY will immediately file a notice to dismiss FLORENCIO MARTINEZ RUBIO as a party with respect to the hearing currently scheduled for November 12, 2021, or any other hearings in the State Lawsuit, or cause other appropriate paperwork to be filed to cancel FLORENCIO MARTINEZ RUBIO's appearance at the November 12, 2021 or other scheduled hearings in the State Lawsuit. In all events, the COMPANY will not require FLORENCIO MARTINEZ RUBIO to attend the November 12, 2021 hearing in the State Lawsuit and no further hearings in the State Lawsuit will be scheduled in which the COMPANY requires FLORENCIO MARTINEZ RUBIO's appearance pending finalization of this Agreement.

      d.     FLORENCIO MARTINEZ RUBIO hereby waives and releases his right to future claims and lawsuits against RELEASEES and forever discharge the RELEASEES from any and all losses, expenses, claims, judgments, costs, attorneys' fees, expenses, rights and entitlement, whether known or unknown, that he has now or may later claim to have had against any RELEASEES, without any limitation, on account of anything which has occurred up to the date the parties sign this GENERAL RELEASE AGREEMENT AND COVENANT NOT TO SUE including, without limitation, those arising out of his employment with the RELEASEES. This release includes, but is not limited to, any claims for personal injuries, intentional infliction of emotional distress, defamation, tortious interference with employment, invasion of privacy, workers' compensation retaliation pursuant to Fla. Stat. § 440.205, all benefits under the Florida Workers' Compensation Act pursuant to Chapter 440, Florida Statutues, the Americans with Disabilities Act, back and/or front pay of any losses or other damages to FLORENCIO MARTINEZ RUBIO or his property based on any alleged violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (prohibiting discrimination on account of race sex, color, national origin, or religion); the Age Discrimination in Employment Act (ADEA) of 1967, 29 U.S.C. § 621 *et seq.* (prohibiting discrimination on account of age); the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* (prohibiting discrimination on account of disabilities); The Fair Labor Standards Act of 1938 as amended, 29 U.S.C. § 201 *et seq.*; the

Employee Retirement Income Security Act of 1974; the Family and Medical Leave Act of 1993; the Civil Rights Act of 1991; the Worker Adjustment and Retraining Notification Act of 1988; the Sarbanes-Oxley Act; the Florida Civil Human Rights Act of 1992, Fla. Stat. § 760.01, *et seq*. ("FCRA"); the Florida AIDS Act Equal Pay Law; the Florida Whistleblower Protection Act; the Florida Wage Discrimination Law; the Florida Sickle Cell Trait Discrimination Law; the Florida Genetic Testing in Employment Law; the Florida Smoking Rights Law; Hillsborough County, Florida Ordinances Chapter 30, §19, *et seq*., City of Tampa Human Rights Ordinance, Chapter 12 and any other federal, state or local statute, regulation or common law doctrine regarding employment or discrimination in employment; any disability payments or benefits; any other public programs providing medical expenses, disability payments or other similar benefits; any and all claims under Medicaid and Medicare; any and all claims for reimbursement or subrogation under any group medical policy, individual medical policy or any health maintenance organization; any and all claims for reimbursement or subrogation under any health, sickness, or income disability insurance, automobile accident insurance, and any other similar insurance that provides health benefits or income disability coverage; any and all claims for reimbursement of subrogation under any contract or agreement with any group, organization, partnership or corporation which provides for the payment or reimbursement of medical expenses or wages during any period of disability and any and all actions, claims, or demands whatsoever of any type or nature which may hereafter be brought or asserted against the RELEASEES on account of any injury, loss, or damage that arose, or could arise, from the facts giving rise to the claim being settled hereby.

3.    **NO RE-APPLICATION FOR EMPLOYMENT/CONTRACT SERVICES:**

FLORENCIO MARTINEZ RUBIO agrees never to apply for employment or otherwise seek to be contracted, hired, employed, reemployed or reinstated by the COMPANY and FLORENCIO MARTINEZ RUBIO hereby waives any reinstatement, future employment or contract services with the COMPANY. As part of this Agreement, FLORENCIO MARTINEZ RUBIO specifically waives any present and future claim to reinstatement or employment with COMPANY at any time in the future. The COMPANY is under no obligation or duty to consider FLORENCIO MARTINEZ RUBIO for contract services or employment in the future. If the COMPANY inadvertently offers employment to FLORENCIO MARTINEZ RUBIO, he will decline such offer and if FLORENCIO MARTINEZ RUBIO is inadvertently contracted or employed he agrees that he may be terminated without liability to RELEASEES.

4.    **NON-SOLICITATION OF CUSTOMERS:**

FLORENCIO MARTINEZ RUBIO agrees and covenants, for six months from the date of execution of this Agreement, not to directly or indirectly solicit, contact (including but not limited to e-mail, regular mail, express mail, telephone, fax, and instant message), or attempt to contact with the COMPANY's customers during the period he was employed for purposes of offering or accepting goods or services competitive with those offered by the COMPANY.

5.    **NO KNOWLEDGE OF ILLEGAL ACTIVITY:**

Florencio Martinez Rubio acknowledges that he has no direct knowledge of any actions or inactions by any of the RELEASEES that Florencio Martinez Rubio believes could possibly constitute a basis for a claimed violation of any federal, state or local law, any common law or any rule promulgated by an administrative body.

6.    **CONFIDENTIALITY:**

The parties agree, and promise that, unless compelled by legal process, they shall not disclose to others and shall keep confidential both the fact of and the terms of this settlement, including the amount referred to in this agreement except that they may disclose this information to theirs spouse, attorneys, accountants and other professional advisors to whom the disclosure is necessary to accomplish the purposes for which he has consulted such professional advisors. FLORENCIO MARTINEZ RUBIO expressly promises and agrees that, unless compelled by legal process, he shall not disclose to any present or former employees or independent contractors of the COMPANY the fact or the terms of this Agreement.

7.    **NON-DISPARAGEMENT:**

The parties promise and agree that they shall refrain from making defamatory or derogatory comments either verbally or written concerning each other, (and as applicable, the COMPANY's owners, management, Board of Directors and employees).

8.    **GOVERNING LAW:**

This agreement is made and entered into in the State of Florida and shall be interpreted, construed and enforced in accordance with the laws of the State of Florida and before the federal or state courts located in Florida.

9.    **SEVERABILITY:**

If for any reason any part of this Agreement is found to be invalid, illegal, unconstitutional, unenforceable or void it will have no effect on the remaining portions of the Agreement and said remaining portions will remain intact and in full force and effect.

10.    **ORIGINAL AGREEMENT:**

This Agreement may be executed by the Parties in separate counterparts; each of which may be deemed to consitute an original and may be returned via e-mail to each other.

**11.    <u>BREACH OF AGREEMENT</u>:**

       In the event it is necessary for any Party to retain the services of an attorney or to initiate legal proceedings to enforce the terms of this Agreement, the prevailing party or parties shall be entitled to recover from the non-prevailing party or parties. All costs of such enforement, including reasonable attorney's fees, and including trial and apellate proceedings.

       **IN WITNESS WHEREOF**, and intending to be legally bound by the terms of this Agreement, the Parties have executed the foregoing MUTUAL GENERAL RELEASE AGREEMENT AND COVENANT NOT TO SUE on the dates set forth below:

_____      _____
DORIS TABARES                                              Date
Individually and as agent
for the COMPANY and all RELEASES
named within this AGREEMENT


_____      _____
ELBER BARON                                              Date
Individually and as agent
for the COMPANY and all RELEASES
named within this AGREEMENT

I acknowledge that I have been offered at least 21 days to decide whether or not to sign this Release, that I have seven (7) days from date of execution to revoke this Release and have been advised and encouraged to review this document with an attorney of my choice.


_____      _____
FLORENCIO MARTINEZ RUBIO                          Date

STATE OF_____

COUNTY OF_____

       Sworn to (or affirmed) and subscribed before me, by means of ☐ physical presence or ☐ online notarization, this _____ day of _____ 2020, by Florencio Martinez Rubio, who is personally known to me or who has produced _____ as identification.
          _____
          (Signature of person taking acknowledgment)


          _____
          (Name typed, printed or stamped)
          _____(Title or rank)
          _____(Serial number, if any)